## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY PAVUK, on behalf of herself and others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>AMAZON.COM, INC. AMAZON.COM DEDC, LLC, and AMAZON.COM DEDC, INC.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. |

## NOTICE OF REMOVAL FROM STATE COURT

Defendants Amazon.com, Inc., Amazon.com DEDC, LLC, and Amazon.com DEDC, Inc.[1] (collectively, "Defendants"), by their undersigned attorneys, hereby give notice that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, this action is removed from the Luzerne County Court of Common Pleas to the United States District Court for the Middle District of Pennsylvania. As grounds for removal, Defendants state as follows:

### I.　　THE STATE COURT ACTION

1. On or about October 3, 2013, Plaintiff Kelly Pavuk ("Pavuk") commenced a putative class action by Complaint against Defendants entitled <u>Pavuk v. Amazon.com, Inc. et al.</u>, Case No. 2013-11565-0, in the Luzerne County Court of Common Pleas (the "Complaint"). A true and correct copy of the Summons and Complaint is attached as Exhibit A.

2. On or about October 4, 2013, counsel for Defendants accepted service of the Complaint.

---

[1]　　Although named as a defendant, Amazon.com DEDC, Inc. does not currently exist.

3. On or about October 9, 2013, Pavuk and Defendants agreed upon and entered into a Stipulation whereby Defendants were permitted to move, answer, or otherwise respond to the Complaint on or before November 8, 2013. A true and correct copy of the Stipulation is attached as Exhibit B.

4. No other proceedings have been held in this action, and the Summons, Complaint, and October 9, 2013 Stipulation constitute all processes and pleadings in this action.

5. Plaintiff alleges that Defendants jointly operate a 630,000 square foot logistics facility located in Hazleton, Pennsylvania (the "Facility") and that Defendants did not properly compensate Plaintiff while she worked at the Facility. See Exhibit A (Complaint), ¶¶ 8-10, 48. More specifically, Plaintiff alleges that Defendants failed to comply with the requirements of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. §§ 333.102 et seq. Id. at ¶ 48. Plaintiff asserts claims on behalf of a putative class of other individuals who have worked for Defendants at the Facility since October 3, 2010.[2] Id. at ¶¶ 35, 48.

## II. REMOVAL IS TIMELY

6. This Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b), as it is being filed within thirty (30) days after October 4, 2013, the date upon which Defendants accepted service of Plaintiff's Complaint.

7. No previous Notice of Removal has been filed with this Court for the relief sought herein.

## III. GROUNDS FOR REMOVAL

8. 28 U.S.C. § 1441 establishes when an action is removable. 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United

---

[2] Defendants do not concede, and reserve the right to contest, Plaintiff's allegation that this lawsuit properly can proceed as a class action.

States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

9. This Court's subject matter jurisdiction, and the basis for removal, is founded upon 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## IV. ORIGINAL SUBJECT MATTER JURISDICTION

10. The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. § 1332(d)(2).

11. CAFA provides for federal subject matter jurisdiction over any class action in which (1) the matter in controversy exceeds a specified jurisdictional minimum of $5 million, (2) the aggregate number of putative class members in all proposed plaintiff classes is at least 100, and (3) any member of a class of plaintiffs is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2), 1332(d)(5).

12. Although Defendants deny Plaintiff's factual allegations and that she or the class she purports to represent is entitled to the relief requested, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case. Accordingly, diversity of citizenship exists under CAFA, and this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A. The Amount Plaintiff Places in Controversy Exceeds $5 Million

13. Although Plaintiff's Complaint is silent on the specific amount of damages, Plaintiff's bare allegations are enough to show that the amount in controversy exceeds the jurisdictional minimum.[3]

---

[3] Defendants dispute, and reserve the right to contest, that any amount is owed to either Plaintiff or the putative class members that she seeks to represent. Yet, the amount in

14. When a complaint does not aver "that the amount in controversy is less than the jurisdictional minimum" required under CAFA, as is the case here, the case will only be remanded "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount." See Frederico v. Home Depot, Inc., 507 F.3d 188, 197 (3rd Cir. 2007). Congress has stated that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." See S. REP. 109-14, at 42 (2005) (citation omitted).

15. For cases being removed pursuant to CAFA, "determining the amount in controversy begins with a reading of the complaint filed in the state court." Frederico, 507 F.3d at 197 (quoting Samuel–Bassett v. KIA Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004)). In this matter, Plaintiff purports to represent a class consisting of all "Warehouse Workers" that have worked at the Facility since October 3, 2010. See Exhibit A (Complaint), ¶¶ 11, 18, 35.

16. Plaintiff alleges that Defendants violated the PMWA by not compensating all Warehouse Workers during the end-of-shift screening process that "approximately takes between 10 and 20 minutes, and, with delays … can last longer." See Exhibit A (Complaint), ¶ 25. Plaintiff alleges further that the Defendants violated the PMWA by not compensating all Warehouse Workers for passing through the same screening process during meal breaks or for walking to that screening area. See id. at ¶¶ 28-32, 48.

17. Taken together, Plaintiff explicitly claims that each member of the putative class is entitled to compensation for 20 to 40-plus minutes, and more "with delays" (such as from individual searches using a metal detecting wand and/or inspection of bags and personal items –

---

controversy requirement is satisfied for purposes of removal by Plaintiff's allegations in the Complaint.

see Exhibit A (Complaint), ¶¶ 22-24), of uncompensated time for every day a putative class member has to go through security screening, which Plaintiff alleges has occurred about twice per week (Compl. ¶¶ 26, 32) for each individual who has worked at the Facility since October 3, 2010. Using a modest 2.5 minutes' average additional "delay" based on Plaintiff's allegation of 10-20 minutes per instance but often with longer delays, this is the equivalent of at least 45 to 85 minutes per week, and possibly more, with the median being at least 65 minutes per week, given Plaintiff's allegation that she "was forced to proceed through a metal detector prior to exiting the Center at least twice a week" and that she "was forced to proceed through a metal detector at least twice a week during her 30-minute unpaid meal break." See Exhibit A (Complaint) at ¶¶ 26, 32.

18.     Plaintiff alleges further that Defendants "automatically deduct 30 minutes from Warehouse Workers' compensable time each shift for an unpaid meal break," "require Warehouse Workers to remain at their work locations within the Facility until the start of the purported 30-minute meal break," and that "[a]fter the start of the 30-minute meal break, Warehouse Workers walk to the [Facility's] time clocks and clock-out." See Exhibit A (Complaint), ¶¶ 28-30.

19.     Taken together, these allegations of the Complaint claim that the putative class has been deprived of well more than 10 minutes out of their 30-minute unpaid lunch break (*i.e.*, 10-20 minutes or more of screening plus time spent walking to time clocks), which reduces the unpaid lunch break (according to Plaintiff's allegations) to less than 20 minutes. In so doing, it is reasonable to assume that Plaintiff is seeking compensation for the entirety of her and putative class members' lunch breaks. See 29 CFR 785.19 (defining non-compensable "bona fide meal period" as usually any amount of time 30-minutes or more); 29 CFR 785.18 (stating that 5 to 20

minutes of "rest" is compensable); see, e.g., Atkinson v. House of Raeford Farms, Inc., 6:09-CV-01901-JMC, 2012 WL 2871747 (D.S.C. July 12, 2012) (finding that a lunch break under 20 minutes is actually a compensable break). Defendants dispute that the Plaintiff could recover this relief under Pennsylvania law or that the factual record will support her allegations, but under Plaintiff's theory the putative class members would be entitled to a total amount of at least 85 to 105 minutes per week in alleged uncompensated time, with the median being at least 95 minutes.

20. Plaintiff seeks to recover not only purported damages accrued at the time of filing, but also damages that continue to accrue during the course of this lawsuit. See Exhibit A (Complaint), ¶ 35 (stating that the action is brought on behalf of Plaintiff and "*all* individuals employed at the [Facility] who, during any workweek *since* October 3, 2010, have been required by Defendants to proceed through the screening process . . . ." (emphasis added)).

21. Accordingly, the amount of continuing liability for any current hourly employee within the putative class should be considered in calculating the amount in controversy. See Broglie v. MacKay-Smith, 541 F.2d 453, 455 (4th Cir. 1976) ("[D]amages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments . . . will be adjudged in the present suit."). This concept is common in employment disputes involving back-pay, front-pay, or lost wages, with courts routinely including liability that continues throughout litigation in the amount in controversy. See, e.g., Chabal v. Reagan, 822 F.2d 349 (3d Cir. 1987) (holding that "the amount in controversy cannot be considered only the amount of back pay accrued at the time of filing," but should also should

consider whether "recovery would exceed [the minimum] through the continuing accrual of back pay during the course of litigation").[4]

22.    The ruling in Mazzucco v. Kraft Foods Global, Inc., No. 11–2430, 2011 WL 6935320 (D.N.J. Nov. 23, 2011), is instructive.  In Mazzucco, the plaintiff in a wage and hour dispute defined the putative class—just as Plaintiff has here—to include current and former employees.  Id. at *7.  Noting that alleged violations continued throughout the lawsuit, the Court held:

> An accurate reflection of damages would include the unpaid wages during the course of the litigation.  The right to collect damages accruing subsequent to the filing of the complaint will be adjudicated in this matter.  Therefore, it is proper for this Court to include those damages in its amount in controversy analysis.

Id. at *8 (internal citations omitted); accord Faltaous v. Johnson & Johnson, No. 07-1572, 2007 WL 3256833, at *9-10 (D.N.J. Nov. 5, 2007) (finding the application of this approach to a wage

---

[4]    See also, e.g., Shaw v. Gwatney, 795 F.2d 1351, 1355-56 (8th Cir. 1986) (the amount of a claim for back pay "is not the amount . . . accrued at the time of filing but the total amount of back pay the plaintiff stands ultimately to recover in the suit"); Goble v. Marsh, 684 F.2d 12, 15 (D.C. Cir. 1982) ("By its very nature, a back pay claim continues to accrue between filing of the complaint and entry of final judgment."); Andrews v. E.I. Du Pont de Nemours & Co., 447 F.3d 510, 515 (7th Cir. 2006) (considering future lost wages as factor in satisfying jurisdictional minimum); White v. Loomis Armored US, Inc., 729 F. Supp. 2d 897, 902 (E.D. Mich. 2010) ("With respect to the lost wages, courts have used the wages the plaintiff stands to recover by the time the case concludes in calculating the amount in controversy."); Reinhardt v. Mont. Human Rights Bureau, 2010 WL 5391280, at *3 (D. Mont. Dec. 17, 2010) (including alleged back- and front-pay in jurisdictional analysis, both of which were still accruing during litigation); DeWolff v. Hexacomb Corp., 2009 WL 2370723, at *3 (W.D. Mich. July 30, 2009) (concluding that if plaintiff prevails, he could recover back-pay "for the period from the filing of the complaint until entry of judgment in this case"); Logsdon v. Duron, Inc., 2005 WL 1163095, at *4-5 (M.D. Fla. May 17, 2005) (using back- and front-pay accruing up to and until the time of trial in finding that plaintiff's complaint satisfied the amount-in-controversy requirement); Savage v. Envirotest Sys. Corp., 1996 WL 732551, at *3 (D. Conn. Dec. 13, 1996) (observing that "[i]t is reasonable to assume that this action, allowing for discovery and dispositive motions, will not be tried for another year . . . [t]hus, if [plaintiff] ultimately prevails, her accrued backpay and employment benefits alone will likely exceed [the jurisdictional minimum]").

and hour class action consistent with "the norm in employment cases in which backpay and frontpay are routinely awarded"). The same reasoning applies to Plaintiff's claims here.[5]

23. To determine the appropriate time period for assessing the amount in controversy where damages continue to accrue after a complaint is filed, courts have relied upon the median interval between the time of filing a civil case in the district through disposition after trial, as reported annually by the Administrative Office of the United States Courts. See Mazzucco, 2011 WL 6935320, at *8; Faltaous, 2007 WL 3256833, at *10; DeWolff, 2009 WL 2370723, at *3. Other courts have simply estimated the time it would take until the case would be tried. See, e.g., Savage, 1996 WL 732551, at *3.

24. The median time interval from the filing of a civil case in the Middle District of Pennsylvania through trial is 25.5 months. See Federal Judicial Caseload Statistics, Table C-5, "U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2012," available online at http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf (last visited November 1, 2013). As this is the *median* time through trial for *all* civil cases in the Middle District of Pennsylvania – including single-plaintiff and cases and other far less complex matters than alleged here – this period is undoubtedly shorter than reasonably can be anticipated for a class action such as this matter.

---

[5] Taking into account any damages accruing after a lawsuit is filed is entirely consistent with the general rule that jurisdiction must be determined based upon the circumstances prevailing at the time of removal. Whether such damages are "in controversy" is still determined by analyzing a plaintiff's complaint at that time, even though those damages may accrue after the lawsuit is filed. See, e.g., Mazzucco, 2011 WL 6935320, at *3 (as applied to future damages, "limiting the amount in controversy analysis to the date upon which the removal was filed is too restrictive [and] an appropriate amount in controversy analysis considers the pleadings as well as damages accruing in the future").

25.     In any event, using just the median interval for civil cases in the Middle District of Pennsylvania, a potential trial in this matter will not be completed until November 18, 2015—25 months and 15 days from the date this action was initiated.  Accordingly, the putative class members' claimed damages encompass at least the dates between October 3, 2010 and November 18, 2015.

26.     Plaintiff states in the Complaint that Defendants failed to compensate putative class members "for all hours worked both after their paid shifts and during their unpaid 30-minute breaks," and also failed to pay them "the legally mandated overtime premium for such work on those occasions where their work exceeded 40 hours in a workweek."  See Exhibit A (Complaint), ¶ 48.

27.     In addition to overtime, Plaintiff also seeks straight time damages (on her behalf and on behalf of the putative class) for allegedly unpaid hours worked *under* 40 in any given week, at least for those weeks where the claimant's total combined paid time and allegedly unpaid time exceeds 40 hours for the week.  The Prayer for Relief specifically seeks "other and further relief" beyond unpaid overtime wages.  See Exhibit A (Complaint), Prayer for Relief, ¶¶ B, E.  Plaintiff also refers multiple times to employees allegedly not being paid for all hours worked and/or "all time that Warehouse Workers are required by Defendants to be on the premises" – separate and apart from her allegations that Defendants failed to pay overtime.  See id. at ¶¶ 17, 27, 38, 45, 47, 48.  Furthermore, by e-mail dated November 1, 2013, Plaintiff's counsel confirmed Plaintiff's position that "during weeks in which Plaintiff and the class members' combined paid and unpaid compensable time exceeds 40 hours, Plaintiff and the class members are entitled to (i) compensation at their regular pay rate for uncompensated hours worked under 40 hours and (ii) compensation at their overtime premium pay rate for

uncompensated hours worked over 40 hours." Plaintiff's counsel further advised that "Plaintiff is not seeking damages for those workweeks in which the combined paid and unpaid compensable time does not exceed 40 hours."

28.     To determine damages and potential members of the putative class, Defendants based their assumptions on the following:[6]

> a) If the sum of the employee's weekly regular worked hours plus the unpaid time did not exceed 40 hours, the unpaid time was paid at the employee's straight time rate.
>
> b) If the sum of the employee's weekly regular worked hours plus the unpaid time did exceed 40 hours, the unpaid time up to 40 hours was paid at the employee's straight time rate and the unpaid time over 40 hours was paid at the employee's overtime rate.
>
> c) The employee's straight time rate is equal to the employee's hourly rate plus any shift differential.
>
> d) The employee's overtime pay rate is the straight time rate plus any shift differential multiplied by one-and-one-half.
>
> e) If an employee was not employed or was on leave for a portion of a week then that week is excluded from the damage estimate and class of putative class members.

---

[6]  Defendants utilize bi-weekly payroll data, as employees are paid on every other Friday for work conducted in the prior two weeks from Sunday through Saturday. Exhibit C, ¶ 5 (Declaration of Amy J. Purdie). Defendants' payroll data contained the total number of regular hours and overtime hours the employee earned in each two-week pay period but did not show how the hours were distributed across the two weeks. Id. at ¶ 6. Accordingly, the following assumptions were made in calculating damages:

  a) If the employee had 80 regular hours over a two-week period, that employee worked 40 regular hours in each week.

  b) If the employee had less than 80 regular hours and more than zero overtime hours over a two-week period, that employee worked 40 hours in one week of the pay period and the remainder of the regular hours in the other week.

  c) If the employee had less than 80 regular hours and no overtime hours over a two-week period, that employee worked half of the regular hours in the first week and half of the regular hours in the second week.

Id. at ¶ 7.

Exhibit C, ¶ 8 (Declaration of Amy J. Purdie).

29. The assumptions were based on data provided by Defendants reflecting hire dates, leave of absence dates, and termination dates for the putative class members. See Exhibit C, ¶ 3 (Declaration of Amy J. Purdie).

30. Using Plaintiff's definition of Warehouse Workers, the theory of relief noted in the Complaint, and the above-noted data and assumptions, Defendants have determined that there are currently at least 2,064 members in Plaintiff's putative class – all hourly employees of Defendants who would have passed through security screening. See Exhibit A (Complaint), ¶¶ 11, 35, 48; see also Exhibit C, ¶ 9 (Declaration of Amy J. Purdie).

31. Based on the noted number of putative class members, their work weeks during the claimed liability period described above, and the median uncompensated wages alleged in the Complaint of 95 minutes per week (including Plaintiff's claim to recover additional wages for the entirety of each 30-minute lunch break), the putative class seeks at least $3,842,023 in damages against Defendants. See Exhibit C, ¶ 10 (Declaration of Amy J. Purdie). This amount includes $1,974,320 in damages calculated between October 3, 2010 and the date of Defendants' last payroll, October 5, 2013, and the additional damages through anticipated trial from October 6, 2013 to November 18, 2015 (based on the median 25.5 months to trial in the Middle District of Pennsylvania), which in total equals $1,867,703. See id.

32. Plaintiff, however, also seeks attorneys' fees. See Exhibit A (Complaint), Prayer for Relief, ¶ C. In determining the amount in controversy for purposes of removal, attorneys' fees in the amount of 30% may be aggregated with the claimed damages. Frederico, 507 F.3d at 199 (considering attorneys' fees of 30% when calculating amount in controversy); Lorah v. SunTrust Mortgage, Inc., CIV.A. 08-703, 2009 WL 413113 (E.D. Pa. Feb. 18, 2009); Hoffman

11

v. Nutraceutical Corp., CIV. 12-5803-ES-SCM, 2013 WL 885169, *4 (D.N.J. Jan. 24, 2013); Andrews v. Home Depot U.S.A., Inc., No. 03-5200, 2010 WL 5464303, at *3 (D. N.J. Dec. 29, 2010).

33. Based on the noted number of putative class members, their work weeks during the claimed liability period described above, and the median uncompensated wages alleged in the Complaint of 95 minutes per week (including Plaintiff's claim to recover additional wages for the entirety of each 30-minute lunch break), Plaintiff seeks $1,152,606 in attorneys' fees against Defendants. When combined with underlying claimed damages, this results in claimed damages of at a bare minimum $4,994,629.

34. As noted above, however, these calculations conservatively use the *median* amount of time for a case to proceed through trial in the Middle District of Pennsylvania – 25.5 months. The putative class action Plaintiff has pleaded on behalf of more than 2,000 others is undoubtedly more complex and will prove more time-consuming than the vast majority of cases pending before this Court. If this case takes even *two days* longer than the 25.5-month median to proceed through trial – to November 20, 2015, the end of that week – then the value of additional claimed damages from October 6, 2013 through November 20, 2015 will equal $1,875,797. See Exhibit C, ¶ 10 (Declaration of Amy J. Purdie). Plaintiff's claimed damages from October 3, 2010 through November 20, 2015 would then equal $3,850,117, which – when combined with attorney's fees of 30%, or $1,155,035 – will result in total claimed damages to $5,005,152. This amount exceeds the jurisdictional threshold of $5 million under CAFA.[7]

---

[7] Defendants deny the validity of Plaintiff's allegations, and/or that Plaintiff would be entitled to any of the relief she seeks. However, for purposes of jurisdiction under CAFA, Defendants accept Plaintiff's allegations solely for the purpose of establishing that Plaintiff, through these allegations, seeks damages in excess of the jurisdictional requirement.

### B.     There Are Over 100 Putative Class Members

35.    Plaintiff purports to assert claims on behalf of a putative class of all warehouse workers that have worked at the Facility since October 3, 2010 and have combined paid and unpaid time during a given week exceeding 40 hours.  See Exhibit A (Complaint), ¶¶ 11, 35, 48. Based on this definition, the putative class currently includes at least 2,064 putative class members.

36.    Plaintiff further alleges that "Defendants employ hundreds of Warehouse Workers at the [Facility]."  See Exhibit A (Complaint), ¶ 13.  Thus, even by Plaintiff's account the requirement for a class of at least 100 individuals is satisfied.

### C.     Diversity Exists Between the Parties

37.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled, and residence alone is enough to establish a presumption of domicile.  See Anthony v. Small Tube Mfg. Corp., 535 F. Supp.2d 506, 515 (E.D. Pa. 2007) (citizenship and domicile are equivalent for diversity purposes); Capato v. Astrue, No. 08-5405, 2010 WL 1076522 at *6 (D.N.J. March 23, 2010) (residency establishes a presumption of domicile) (citing District of Columbia v. Murphy, 314 U.S. 441, 455 (1941)).

38.    Plaintiff admits to "residing" in Pennsylvania and should be considered a citizen of that Commonwealth.  See Exhibit A (Complaint) at ¶ 1.

39.    Upon information and belief, Plaintiff is a citizen of Pennsylvania domiciled at her last known address, 113 Washington Street, Freeland, Pennsylvania 18224.

40.    Pursuant to 28 U.S.C. § 1332(c) and 1332(d)(10), a corporation or unincorporated association is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is incorporated or organized.

41. Defendant Amazon.com, Inc. is a Delaware corporation, with a principal place of business in the State of Washington. And so, this Defendant is a citizen of Delaware and Washington, while Plaintiff is a citizen of Pennsylvania.

42. Defendant Amazon.com DEDC, LLC is a Delaware corporation, with a principal place of business in the State of Washington. And so, this Defendant is a citizen of Delaware and Washington, while Plaintiff is a citizen of Pennsylvania.

43. Although purported to be named as a Defendant, Amazon.com DEDC, Inc. does not currently exist. At all times during which Amazon.com DEDC, Inc. existed, it was a Delaware corporation with a principal place of business in the State of Washington.

### V.     OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

44. Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because the Luzerne County Court of Common Pleas, where this action was filed and had been pending prior to removal, is a state court within this federal district and division.

45. Defendants will promptly file a certified copy of this Notice of Removal with the Prothonotary for the Luzerne County Court of Common Pleas in accordance with 28 U.S.C. § 1446(d).

46. Written notice of the filing of this Notice of Removal has been or will be given to Plaintiff in accordance with 28 U.S.C. § 1446(d).

47. A completed Federal Civil Cover Sheet accompanies this Notice of Removal.

48. If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present both a brief and oral argument in support of its position that this case is removable.

**WHEREFORE,** Defendants respectfully request that all further proceedings in the Luzerne County Court of Common Pleas be discontinued and that this suit be removed to the United States District Court for the Middle District of Pennsylvania.

Date: November 1, 2013  Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Michael J. Puma

Richard G. Rosenblatt (Bar # 59096)
Michael J. Puma (Bar # 94463)
1701 Market Street
Philadelphia, PA 19103
215.963.5000 (telephone)
215.963.5001 (facsimile)

*Counsel for Defendants*
*Amazon.com, Inc.,*
*Amazon.com.DEDC, LLC,*
*Amazon.com DEDC, Inc.*

## **CERTIFICATE OF SERVICE**

I, Michael J. Puma, hereby certify that a true and correct copy of Defendants' Notice of Removal (and Exhibits A-C thereto) was filed via ECF and served via electronic and regular mail this 1st day of November, 2013 upon:

Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
Mark J. Gottesfeld, Esq.
WINEBRAKE & SANTILLO, LLC
715 Twining Road
Suite 211
Drescher, PA  19025

Todd O'Malley, Esq.
Thomas J. Gilbride, Esq.
O'MALLEY & LANGAN, PC
201 Franklin Avenue
Scranton, PA 18503

Jerry E. Martin, Esq.
David W. Garrison, Esq.
Scott P. Tift, Esq.
Seth M. Hyatt, Esq.
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN  37201

s/ Michael J. Puma
Michael J. Puma